UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIROSLAWA GREBLA,<br><br>Plaintiff,<br><br>v.<br><br>DANBURY HOSPITAL<br><br>Defendant. | 3:22-CV-00013-SALM<br><br><br><br>JANUARY 6, 2022<br><br><br>JURY TRIAL REQUESTED |

**AMENDED COMPLAINT**

Plaintiff, Miroslawa Grebla, ("Mrs. Grebla" or "Plaintiff"), by and through her attorney Christopher S. Avcollie of Carey & Associates, P.C., hereby files this Complaint against Defendant Danbury Hospital ("Defendant") seeking compensation for losses and damages sustained as a result of the Defendant's unlawful discrimination in the terms, conditions, and privileges of her employment based on her age in violation of state and federal law. The Plaintiff pleads as follows:

**I.    PRELIMINARY STATEMENT**

1.    This is Plaintiff's complaint pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq. ("ADEA") and the Connecticut Unfair Employment Practices Act, Connecticut General Statutes § 46(a)-60(b)(1) ("CFEPA"). Plaintiff also alleges pendent claims for common law causes of action sounding in breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, and

intentional infliction of emotional distress. The Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and such other equitable relief as the Court shall award.

**II.     JURISDICTION, VENUE, & PARTIES**

2.      This action is authorized and instituted pursuant to the Age Discrimination in Employment Act 29 U.S.C. § 621, et. seq. and pursuant to 28 U.S.C. §§ 451, 1331 and 1343(3) and (4). Further jurisdiction is authorized for the breach of contract claim pursuant to the National Labor Relations Act, 29 U.S.C. § 29 U.S.C. §151 et. seq. and §301 of the Labor Management Relations Act 29 U.S.C. §185. This Court has supplemental jurisdiction for common law claims pursuant to 28 U.S.C. § 1367.

3.      All of the allegations made herein occurred within the territorial jurisdiction of the United States District Court for the District of Connecticut.

4.      Plaintiff Mrs. Grebla was at all relevant times a Connecticut resident residing in Roxbury, Connecticut.

5.      Defendant Danbury Hospital ("Danbury" or "Defendant") was at all relevant times an organization incorporated in and registered to do business in Connecticut. Danbury has a headquarters and primary place of operations located at 24 Hospital Avenue, Danbury, Connecticut 06810.

**III.    PROCEDURAL PREREQUISITES**

6.      On or around November 2, 2020, Mrs. Grebla filed a charge of discrimination on the basis of age with the Connecticut Commission on Human Rights and Opportunities (CHRO). The CHRO made an automatic dual filing with the United States Equal Employment Opportunity Commission (EEOC) against the Defendant named in this action.

7.      On October 6, 2021, the EEOC issued a Notice of Right to Sue for EEOC No. 16A-2021-00363. The Notice of Right to Sue was received by the Plaintiff on October 9, 2021. (Exhibit "A").

8. On April 30, 2021, the CHRO issued a Release of Jurisdiction for CHRO No. 2120217. (Exhibit "B").

9. All administrative prerequisites to the institution of this action have been satisfied including those under §301 of the Labor Management Relations Act 29 U.S.C. §185.

10. All of the applicable statutes of limitation are tolled in this matter due to the doctrine of equitable tolling due to the global pandemic and other equitable reasons.

**IV.  STATEMENT OF FACTS RELEVANT TO ALL CLAIMS**

11. The Plaintiff is currently 66 years old with a date of birth of ##/##/1955.

12. The Defendant employs more than 50+ persons.

13. Plaintiff began working for the Defendant on October 6, 1986, as a Nursing Assistant. The Plaintiff's most recent position was that of a full-time, Monitor Technician on the night shift at Danbury Hospital.

14. Throughout the Plaintiff's 34 year tenure of employment, her performance was very good.

15. At all relevant times, the Plaintiff reported to Defendant Manager Christine Vigilio who was, based upon information and belief, significantly younger than the Plaintiff.

16. At all relevant times the Plaintiff was a unionized member of the Connecticut Health Care Associates AFSCME, AFL-CIO (the "Union").

17. At all relevant times the terms and conditions of the Plaintiff's employment were governed primarily by a collective bargaining agreement ("CBA") between the Union and the Defendant.

18. The CBA provides that employees such as Mrs. Grebla can only be terminated for just cause as defined in that agreement.

19. The Defendants discriminated against Mrs. Grebla based on her age in that they disciplined and terminated her for false and pretextual reasons and under circumstances which would not have led to the discipline or termination of younger employees who were similarly situated to the Plaintiff.

20. On October 3, 2019, the Plaintiff was notified by Ann Marie Lavery, Director of Nursing, that she was suspended with pay from work for three nights, because she was being investigated for allegedly threatening Alexandra Perri (age, 20's), Registered Nurse. The Defendant allegedly received an anonymous call about this alleged threat.

21. The allegations against the Plaintiff were false and no threats had been made by the Plaintiff to any employee.

22. After the Defendants completed their investigation, Plaintiff returned to work on October 11, 2019 and was informed that the Defendant could find no evidence of any threats or wrongdoing by the Plaintiff.

23. On December 4, 2019, Plaintiff received a phone call from Ms. Vigilio, who stated that the Plaintiff was being suspended from work and that she was being investigated once again. Ms. Vigilio did not give Mrs. Grebla a reason for the suspension.

24. On December 11, 2019, the Plaintiff was called in to a meeting with Ann Marie Lavery, Director of Nursing and Christine Viglio, Manager, Jessica Ellul, Union Representative and Ebbie Griffin, of the Defendants' Human Resources Department.

25. During the December 11, 2019 meeting, Christine falsely accused the Plaintiff of not performing her job duties, while monitoring a patient for a co-worker, Ida Prince, Monitor Technician, while Ms. Prince was on her break.

26. Ms. Viglio stated that sometime in November of 2019, while Plaintiff was monitoring one of Ms. Prince's patients, the patient had a V-Tach and the Plaintiff failed to report the V-

Tach incident. This allegation was untrue because the patient had no V-Tach incident during the Plaintiff's period of coverage for Ms. Prince.

27.   There are two cameras in the monitoring room where the Plaintiff worked. When Ann Marie Lavery, from Human Resources played the video, it showed that there was no red alarm for the patient, which indicated that the Plaintiff was telling the truth and that the patient was never in V-Tach as alleged during the relevant period.

28.   Notwithstanding the exculpatory video evidence, Ms. Lavery and Ms. Viglio continued to harass and question the Plaintiff about the alleged incident and continued to state that the Plaintiff had failed to report the patient being in V-Tach.

29.   The Plaintiff continued to explain that the patient never went into V-Tach, while she was monitoring for Ms. Prince, however, the Defendant Managers would not listen and continued to question the Plaintiff.

30.   The Defendants then asked the Plaintiff why she ripped the event strip from the monitor, because the video showed the Plaintiff doing so. Mrs. Grebla explained that she wanted to review the event strip to make sure that she did not miss any medical events for the patient.

31.   When Mrs. Grebla reviewed the strip, she did not see any medical events for the patient during the Plaintiff's period of coverage, so there was nothing to report to Ms. Prince when she returned from her break.

32.   The Defendant chose arbitrarily and without cause to blame the Plaintiff for this event rather than Ms. Prince who was responsible for the patient at the time of the V-Tach event.

33.   Ms. Viglio then accused the Plaintiff of not being able to answer the Registered Nurses questions about patients. This accusation was unfounded as the Plaintiff was not required to answer questions to which she does not know the answer.

34.   Next, Ms. Viglio falsely accused the Plaintiff of not following the Defendant's policy

regarding patients being off telemetry. The Plaintiff informed Ms. Viglio that she always followed the policy.

35. Ms. Viglio then falsely accused the Plaintiff of not allowing her co-workers to review patients on telemetry. The Plaintiff informed he Defendant that was untrue also.

36. Further, prior to the Defendants' initiation of the harassment in the form of unwarranted investigations and unnecessary discipline based on false accusations, the Plaintiff had complained about younger co-workers behaving unprofessionally on a number of occasions and the Defendant failed to address the Plaintiff's concerns.

37. During the December 11, 2019 meeting, the Plaintiff was terminated by Defendants acting through their employee Ms. Lavery, who stated that the termination was because of the alleged incidents outlined above including the alleged November 2019 patient V-Tach incident.

38. Danbury maintains and propagates a pattern and practice of concerted age discrimination against employees significantly over the age of 40, including the Plaintiff.

39. The Defendant purports to be an equal opportunity employer. Despite these expressions of unbiased decision making, Defendant's pattern of replacing older workers in favor of hiring and advancing employees close to or under the age of 40 has had a disproportionate negative and adverse impact upon employees over the age of 40 including the Plaintiff.

V.   **CAUSES OF ACTION**

**COUNT ONE: AGE DISCRIMINATION PURSUANT TO THE ADEA**

1-39. The allegations of paragraphs 1-39 are incorporated herein by reference as if fully set forth in Count One.

40. Plaintiff, age 64 on the date of termination, was at all relevant times a highly qualified and competent employee of the Defendant and a covered person pursuant to the Age Discrimination in Employment Act (ADEA).

41. Plaintiff was subjected to a series of adverse employment actions as described herein,

including but not limited to unequal treatment on account of her age, denial of the rights and privileges of her position and wrongful termination of her employment.

42. The Defendant had no legitimate non-discriminatory basis for the adverse termination of the Plaintiff at the time of her termination. The reasons advanced for the Plaintiff's termination are pretextual or false and were created to justify the age-based decision.

43. The Plaintiff was denied equal treatment in the terms, conditions and privileges of her employment as stated herein above on account of her age in that she was terminated without just cause and replaced by a younger worker, was disciplined without cause, was harassed, and was denied the privileges which other younger employees were permitted.

44. The Plaintiff's age was the but for cause of all of the adverse employment actions alleged herein.

45. At all relevant times, the Plaintiff was performing her duties competently, was highly qualified for her position, and was in compliance with the reasonable performance expectations of the Defendant.

46. The Defendant exhibited a pattern and practice of age discrimination. The Defendant discriminated against older workers in favor of hiring, retaining, promoting and employing younger workers.

47. As a direct result of the Defendant's disparate treatment based on her age, the Plaintiff suffered loss of wages, loss of benefits, loss of pension benefits, loss of career opportunities, damage to her reputation, loss of status and inability to locate suitable replacement employment, all to her loss and damage.

48. Defendant should be held liable for discriminating against Plaintiff on account of her age, in violation of the ADEA.

**COUNT TWO: AGE DISCRIMINATION PURSUANT TO THE CFEPA**

1-48.   The allegations of paragraphs 1-48 are incorporated herein by reference as if fully set forth in Count Two.

49.   Plaintiff, age 64 on the date of termination, was at all relevant times a highly qualified and competent employee of the Defendant and a covered person pursuant to the Connecticut Unfair Employment Practices Act (CFEPA).

50.   Plaintiff was subjected to a series of adverse employment actions as described herein, including but not limited to unequal treatment on account of her age, denial of the rights and privileges of her position and wrongful termination of her employment.

51.   The Defendant had no legitimate non-discriminatory basis for the adverse termination of the Plaintiff at the time of her termination. The reasons advanced for the Plaintiff's termination are pretextual or false and were created to justify the age-based decision.

52.   The Plaintiff was denied equal treatment in the terms, conditions and privileges of her employment as stated herein above on account of her age in that she was terminated without just cause and replaced by a younger worker, was disciplined without cause, was harassed, and was denied the privileges which other younger employees were permitted.

53.   The Plaintiff's age was a substantial cause of all of the adverse employment actions alleged herein.

54.   At all relevant times, the Plaintiff was performing her duties competently, was highly qualified for her position, and was in compliance with the reasonable performance expectations of the Defendant.

55.   The Defendant exhibited a pattern and practice of age discrimination. The Defendant discriminated against older workers in favor of hiring, retaining, promoting and employing younger workers.

56. As a direct result of the Defendant's disparate treatment based on her age, the Plaintiff suffered loss of wages, loss of benefits, loss of pension benefits, loss of career opportunities, damage to her reputation, loss of status and inability to locate suitable replacement employment, all to her loss and damage.

57. Defendant should be held liable for discriminating against Plaintiff on account of her age, in violation of the ADEA.

**COUNT THREE: BREACH OF CONTRACT**

1-57. The allegations of paragraphs 1-57 are incorporated herein by reference as if fully set forth in Count Three.

58. The Plaintiff was at all relevant times a member of the Union and therefore a party to the CBA between the Union and the Defendant.

59. The CBA represents a contract which governed the terms and conditions of the Plaintiff's employment with the Defendant.

60. The execution of the CBA as set forth above constitutes the formation of an agreement between Plaintiff through her Union and the Defendant employer.

61. The Plaintiff performed all of the duties required of her under the CBA in good faith throughout her 34 year tenure with the Defendants.

62. The Defendants breached their obligations under the CBA in that they terminated the Plaintiff without just cause, in that they disciplined the Plaintiff without basis, and in that they failed to grant the Plaintiff all of the benefits and privileges to which she was entitled under the CBA.

63. The Defendants' breach of the CBA as aforesaid caused the Plaintiff financial losses and damages in the form of lost wages, lost benefits, and lost pension benefits.

64. Defendants' breach has directly and proximately caused harm to the Plaintiff as

aforesaid.

65. Defendants have no legitimate reason for their breach.

66. The Plaintiff is entitled to compensation for the Defendants' breach.

## COUNT FOUR: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

1-66. The allegations of paragraphs 1-66 are incorporated herein by reference as if fully set forth in Count Four.

67. The Plaintiff's employment with Defendant was based on the CBA as aforesaid.

68. The Defendant had a duty to use good faith and fair dealing to fulfill its contractual obligations with Plaintiff.

69. Plaintiff justifiably relied on Defendant not to engage in bad faith actions to deprive her of the benefits and privileges of her employment including the right to just cause termination.

70. Defendant, by engaging in the bad faith actions of using false and disingenuous tactics to engineer the termination of the Plaintiff as set forth above, has breached its duty of good faith and fair dealing toward the Plaintiff.

71. The Defendant has taken such bad faith actions primarily by and through its Managers and Human Resources employees as set forth above.

72. As a result of Defendant's breach of the duty of good faith and fair dealing it owes to Plaintiff, Plaintiff has been, and continues to suffer damages and losses in the form of lost wages, lost benefits, and lost pension benefits.

## COUNT FIVE: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

1-72. The allegations of paragraphs 1-72 are incorporated herein by reference as if fully set

forth in Count Five.

73. Mrs. Grebla asserts that Defendant wrongfully terminated her from her position in violation of the public policy of the State of Connecticut.

74. The conduct of the Defendant as set forth above contravenes public policy in the State of Connecticut in that it violates the Defendant's duty to provide the Plaintiff with a reasonably safe place in which to work and reasonably competent supervisors and co-workers to work with as required by Conn. Gen. Stat. § 31-49.

75. The conduct of the Defendant as set forth above further contravenes public policy in the State of Connecticut in that it violates the Defendant's duty to provide the Plaintiff with an opportunity to make statements in her personnel record in connection with the documented disciplinary actions, notice of termination, and negative performance evaluations issued by Defendant in violation of Conn. Gen. Stat. § 31-128e.

76. The Plaintiff is otherwise without remedy as to these violations of her statutory rights and permitting the Plaintiff's discharge under these circumstances will leave a valuable social policy unvindicated.

77. In this case, the psychological and emotional welfare of Mrs. Grebla was put at risk by the wanton conduct of the Defendant in that it created an unsafe and perilous working environment for Mrs. Grebla who was trying to do her job in good faith.

78. As a result of Defendant's breach of its duty to follow the public policy of the State of Connecticut, the Plaintiff has been, and continues to suffer damages and losses in the form of lost wages, lost benefits, emotional distress and lost pension benefits.

**COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1-78. The allegations of paragraphs 1-78 are incorporated herein by reference as if fully set forth in Count Six.

79. The actions of the Defendant as aforesaid constitute intentional infliction of emotional distress.

80. Plaintiff can successfully establish a prima facie case of intentional infliction of emotional distress against Defendant in that the Defendant knew or should have known that emotional distress was likely to result to Plaintiff as a result of its extreme and outrageous conduct as described above.

81. Defendant's actions inflicted against Plaintiff were at all times known, intentional and willful.

82. Defendant's actions and conduct were extreme and outrageous, as fully described herein above.

83. Defendants' actions and conduct were the direct cause of Plaintiff's distress.

84. As a direct result of the intentional emotional distress inflicted by the Defendant in the course of the Plaintiff's employment, the Plaintiff has suffered damages and losses including, but not limited to, emotional distress, mental pain, suffering, humiliation, and anguish, all or some of which is likely to be permanent and which is likely to result in medical bills and on-going expenses for medical treatment.

85. Defendant should be held liable for it's intentional infliction of emotional distress against the Plaintiff.

## VI. DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

    A. A declaration that the Defendant intentionally and willfully discriminated against Plaintiff on account of her age pursuant to the ADEA;

    B. A declaration that the Defendant intentionally and willfully discriminated against Plaintiff on account of her age and/or perceived disability pursuant to the

CFEPA;

C. Award of Compensatory damages, including loss of enjoyment of life, emotional pain and suffering, back pay, benefits, pension credit, and the value of all other employment benefits in an amount to be determined by the trier of fact;

D. An award of punitive damages for intentional conduct;

E. An Order directing the Defendant to reinstate Plaintiff to her former position or, in the alternative, front pay for five (5) years;

F. Award attorneys' fees and costs of litigation;

G. Award of pre-judgment interest;

H. Award post-judgment interest;

I. A money judgment to recoup any tax loss suffered by Plaintiff as a result of receiving a lump sum award of back pay and front pay rather than having received wages over a period of years; and

J. Award such other relief in law or equity as this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all questions of fact raised by his Complaint.

Respectfully Submitted,
PLAINTIFF
MIROSLAWA GREBLA

By:/s/ Christopher S. Avcollie
Christopher S. Avcollie (ct29034)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, Connecticut 06890
(203) 255-4150 tel
(203) 255-0380 fax
cavcollie@capclaw.com

AND

By:/s/ Mark P. Carey

Mark P. Carey (ct117828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, Connecticut 06890
(203) 255-4150 tel
(203) 255-0380 fax
mcarey@capclaw.com

16