# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MIROSLAWA GREBLA, | ) | CASE NO. 3:22-cv-13 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANBURY HOSPITAL, | ) | MARCH 6, 2023 |
| *Defendant.* | ) | |

## MEMORANDUM OF DECISION
### RE: DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 20)

Kari A. Dooley, United States District Judge:

Plaintiff Miroslawa Grebla ("Grebla" or "Plaintiff") brings this employment discrimination action against her former employer, Danbury Hospital ("Defendant" or "the Hospital"). She alleges discrimination on account of her age under both the Age Discrimination in Employment Act ("ADEA") and the Connecticut Fair Employment Practices Act ("CFEPA"), breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, and intentional infliction of emotional distress ("IIED"). Pending before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6). (ECF No. 20) For the reasons that follow, the motion to dismiss is GRANTED. However, the dismissal is without prejudice as to some claims and Plaintiff is permitted to file a Second Amended Complaint as detailed below.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to subject matter jurisdiction under Rule 12(b)(1), as is raised by Defendant, is similar to that required under Rule 12(b)(6). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by

reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations omitted, internal quotation marks omitted).

**Allegations and Procedural History**

Grebla is a 66-year-old woman. Am. Compl. ¶ 11. Grebla began working at the Hospital as a nursing assistant in 1986 and remained there as a full-time employee until her termination on December 11, 2019. Am. Compl. ¶ 13.

At the time of her termination, Grebla was a Monitor Technician on the night shift. *Id.* She was also a union member of the Connecticut Health Care Associates AFSCME, AFL-CIO ("Union"); the terms and conditions of her employment were governed by a collective bargaining agreement ("CBA") between the Union and the Hospital. Am. Compl. ¶¶ 16–17. The CBA provides that employees such as Grebla can only be terminated for "just cause." Am. Compl. ¶ 18.

In October 2019, the Hospital suspended Grebla with pay for three nights because she was being investigated for allegedly threatening a registered nurse who was in her twenties. Am. Compl. ¶ 20. The Hospital allegedly received an anonymous call about the threat. *Id.* Grebla contends that the allegations against her were false, and she had not threatened any employee. Am. Compl. ¶ 21. When Grebla returned to work, she was informed that Defendant could not find any evidence of threats or other wrongdoing by her. Am. Compl. ¶ 22.

On December 4, 2019, Grebla received a phone call from her manager in which she was informed she was again being suspended from work and investigated. Am. Compl. ¶ 23. Grebla's manager did not give her a reason for the suspension at the time of the call. *Id.*

On December 11, 2019, Grebla had a meeting with the Director of Nursing, her manager, a Union representative, and a Human Resources representative. Am. Compl. ¶ 24. During this meeting, Grebla's manager falsely accused her of not performing her job duties while monitoring

a patient for a coworker. Am. Compl. ¶ 25. According to the Hospital, while Grebla was covering for her coworker, a patient had a V-Tach incident that she failed to report. Am. Compl. ¶ 26. Grebla denies that the patient had a V-Tach during her period of coverage, because when she was shown a video taken of the patient's room, there was no red alarm indicating that the patient was in V-Tach. Am. Compl. ¶ 27. Yet, the Director of Nursing and Grebla's manager continued to harass and question her regarding the incident and insisted that she failed to report the patient being in V-Tach. Am. Compl. ¶ 28. Grebla was then asked why she ripped the event strip from the monitor, as seen on the video, and Grebla explained that she wanted to review the event strip to make sure she didn't miss any medical events. Am. Compl. ¶ 30. Grebla was blamed for the patient being in V-Tach and not her coworker. Am. Compl. ¶ 32. Grebla was also accused of not being able to answer questions from registered nurses about patients and not following Hospital policy regarding patients being of telemetry. Am. Compl. ¶¶ 33–34.

Prior to the December 11, 2019 meeting, Grebla had complained about younger coworkers behaving unprofessionally but the Hospital failed to address those concerns. Am. Compl. ¶ 36.

**Discussion**

*Counts One and Two — Age Discrimination Claims*

Defendant moves to dismiss as untimely Plaintiff's age discrimination claims brought pursuant to the ADEA and the CFEPA. Plaintiff argues that her age discrimination claims are not time barred because Defendant continued its course of discriminatory conduct from December 11, 2019 to an arbitration hearing on April 27, 2021, and, alternatively, that the applicable statutes of limitations should be equitably tolled.

Employees who believe that an employer has violated the CFEPA must, by statute, first pursue administrative remedies with the Commission on Human Rights and Opportunities

("CHRO") before bringing suit. *See Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 215–16 (1985) (explaining that "CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO"). A charge of discrimination to the CHRO must be made within 300 days of the alleged act of discrimination. Conn. Gen. Stat. § 46a-82(f). Further, Section 46a-101(a) provides that "[n]o action may be brought in accordance with section 46a-100 unless the complainant has received a release from the [CHRO] in accordance with the provisions of this section." The release of jurisdiction triggers administrative dismissal or disposal of the complaint, and the complainant has 90 days from the date of receipt of the release to file an action in court. *Id.* § 46a-101(d)-(e). The failure to satisfy the exhaustion provisions of CFEPA results in dismissal for lack of subject matter jurisdiction. *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (collecting cases).

An ADEA claimant must also exhaust administrative remedies as "a precondition to bringing such claims in federal courts." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (internal quotation marks omitted). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). A work-sharing relationship between the Equal Employment Opportunity Commission ("EEOC") and a state discrimination agency such as the CHRO enables the complaint to be cross-listed with the EEOC at the time the CHRO receives it. *See Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000). In states with their own antidiscrimination laws and agencies, like Connecticut, the

time period to file the complaint with the EEOC extends from 180 days to 300 days where there is proof that the complaint was first submitted to the state agency. 42 U.S.C. § 2000e-5(e)(1).

Plaintiff's claims arise out of the termination of her employment on December 11, 2019. *See Vollemans v. Wallingford,* 103 Conn. App. 188, 218–19 (2007), *aff'd* 289 Conn. 57 (2008) (pertinent date for identifying when an act of discrimination occurred for purposes of determining the timeliness of a CHRO complaint is the last date of employment).[1] Plaintiff filed her charge of discrimination with the CHRO, which was then dually filed with the EEOC, on November 2, 2020,[2] 327 days after the alleged unlawful act of discrimination. On April 30, 2021, the CHRO issued a release of jurisdiction. On October 9, 2021, the EEOC issued a notice of right to sue. On January 4, 2022, Plaintiff filed the instant suit in federal court, 249 days after the CHRO issued its release of jurisdiction and 87 days after the EEOC issued its notice of right to sue.

When a complaint appears on its face to be untimely filed, a defendant may challenge the complaint through a motion to dismiss for failure to state a claim upon which relief can be granted. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Here, there can be no dispute that the charge of discrimination as to the ADEA and CFEPA claims was untimely when made to the CHRO and the EEOC on November 2, 2020. Nor is there any dispute that Plaintiff's CFEPA claim was untimely when filed in this action. With respect to the CFEPA claim, although failure to exhaust administrative remedies implicates the Court's subject matter jurisdiction, Connecticut courts have held that the statutory time limitations for doing so, while mandatory, are also subject to equitable tolling. *Sokolovsky v. Mulholland*, 213 Conn. App. 128, 146 (2022)

---

[1] Plaintiff's assertion that the discrimination was ongoing through April 2021 does not alter the actual date on which the act of discrimination occurred. The arbitration proceedings may impact the equitable tolling analysis, but it does not serve to extend or delay the date of the alleged act of discrimination.

[2] Defendant alleges that Plaintiff filed her charge of discrimination on January 8, 2021, as noted by the CHRO in its determination that her charge of discrimination was untimely filed. Def. Mem. at 6; Ex. C, ECF No. 21-3 at 26. The difference in dates has no bearing on the adjudication of this motion to dismiss because Plaintiff's charge of discrimination is untimely regardless of whether it was filed on November 2, 2020, or January 8, 2021.

("[Section] 46a-101 (e) is a mandatory time limitation, subject to waiver and equitable tolling."). Similarly, the deadlines imposed with respect to an ADEA claim are "not jurisdictional and, like a statute of limitations, [are] subject to equitable tolling." *Zerilli-Edelglass v. New York City Transport Authority*, 333 F.3d 74, 80 (2d Cir. 2003). However,

> [E]quitable tolling is only appropriate in [ ] *rare and exceptional circumstance[s]*, . . . in which a party is prevented in some extraordinary way from exercising his rights. . . . Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period . . . where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant . . . or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. . . . When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

*Id.* at 80–81 (internal citations and quotation marks omitted; emphasis added).

Plaintiff alleges that the applicable limitations periods are tolled due to the pandemic and "other equitable reasons." Am. Compl. ¶ 10. Plaintiff did not elaborate on how the pandemic impacted her ability to timely file a charge of discrimination or file her federal lawsuit. Plaintiff also did not elaborate on the "other equitable reasons" to support tolling the limitations periods in this instance. Last, the Complaint is silent as to Plaintiff's own diligence in pursuing her claims. In sum, Plaintiff's conclusory allegations, even if true, do not establish that she is entitled to equitable tolling of the limitations periods for her ADEA and CFEPA claims. *See Iqbal*, 556 U.S. at 678. "When a plaintiff raises an equitable tolling argument in response to a motion to dismiss on statute of limitations grounds, the motion to dismiss should be denied unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled." *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) (internal quotation marks omitted). The motion to dismiss is therefore granted as to the ADEA claim (Count One) and the CFEPA claim (Count Two).

However, in her briefing, Plaintiff presents new factual allegations to support her equitable tolling argument. She alleges that: (1) her Union did not advise her that she had available civil claims for which they would not provide legal counsel, (2) she was in psychological shock after her termination, (3) she had no access to the internet while isolated and libraries "were closed for part of 2020," and (4) she had contacted attorney referral services to no avail, made difficult in part due to her heavy accent and hearing impairments. Pl. Mem. at 10–11.[3] The Court cannot consider these un-alleged facts in deciding the motion to dismiss. But it is apparent that the Plaintiff believes that there are facts to support her argument. Accordingly, the Court dismisses Counts One and Two **without prejudice.** Plaintiff's request to amend her Amended Complaint is GRANTED to the extent she believes she can cure the deficiencies identified herein regarding the equitable tolling of the applicable limitations periods. The Court does not offer any opinion as to whether, if pleaded, the allegations relied upon would adequately support equitable tolling.

*Counts Three and Four — Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims*

Defendant argues that the breach of contract and breach of the implied covenant of good faith and fair dealing claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) because the Court would be required to interpret the CBA in adjudicating Plaintiff's claims. In response, Plaintiff clarifies that she does not bring common law

---

[3] Plaintiff also filed a defective administrative appeal of the CHRO decision to dismiss her charge of discrimination on July 29, 2021, 90 days from the CHRO's release of jurisdiction. Pl. Mem. at 13. While equitable tolling is allowed when a claimant "actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . a plaintiff's failure to act diligently is not a reason to invoke equitable tolling." *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11–12 (2d Cir. 1994); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, (1984) (per curiam) (pro se filing of the "right to sue letter" rather than a complaint did not toll the 90–day period)). Likewise, Plaintiff filed in the superior court her CHRO release of jurisdiction, her reply to Defendant's contention that the charge of discrimination was untimely, and a case assessment review. Plaintiff did not file a complaint in the superior court and the suit was dismissed on December 29, 2021 on that basis, and thus the administrative appeal cannot serve as a basis to toll the statute of limitations.

8

breach of contract or breach of the implied covenant of good faith and fair dealing claims. She asserts that her contract claims are brought pursuant to § 301 of the LMRA and the National Labor Relations Act ("NLRA") and are therefore not preempted. This clarification notwithstanding, a fair reading of the Amended Complaint—indeed, perhaps the only fair reading of the Amended Complaint—is that Plaintiff is alleging common law contract claims, and so the Court addresses Defendant's argument.

"[A]n application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413; *see also Golnik v. Amato*, 299 F. Supp. 2d 8, 20 (D. Conn. 2003) ("In this case, Plaintiff alleges that the CBA was violated by certain acts of the Defendants. Plaintiff relies upon no other contract or agreement for his breach of contract claim. In other words, his breach of contract claim is wholly dependent upon the provisions of the CBA."). "[W]hen resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a CBA, the state law claim 'must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.'" *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (per curiam) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985)).

In *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558 (1984), the Connecticut Supreme Court held that the implied covenant of good faith and fair dealing applies in "every contract without limitation," including employment contracts. 193 Conn. at 566–570. "Section 301 of the LMRA preempts state law claims for breach of the implied covenant of good faith and fair dealing when they are brought by individuals who, like Plaintiff, are employed under collective bargaining agreements." *See, e.g.*, *Billue v. Praxair*, 3:05-cv-170 (JCH), 2005 WL 2807114, at *2 (D. Conn.

Oct. 26, 2005) (citing cases); *Bailey v. Nexstar Broadcasting*, Inc., 3:19-cv-671 (VLB) 2020 WL

1083682, at *12 (D. Conn. Mar. 6, 2020) ("Courts in this District have held that § 301 preempts

[a] cause of action [for breach of the implied covenant of good faith and fair dealing] because

unionized employees enjoy job security under their collective bargaining agreement.").

Accordingly, to the extent Counts Three (breach of contract) and Four (breach of the

implied covenant of good faith and fair dealing) might be construed as advancing common law

claims, they are dismissed as preempted by the LMRA. *See Lane v. 1199 SEIU Healthcare

Workers Lab. Union*, 694 F. App'x 819, 821 (2d Cir. 2017) ("[T]he powerful preemptive force of

Section 301 displaces all claims substantially dependent on analysis of a collective-bargaining

agreement, which would be the case with a breach-of-contract claim[.]" (citation and quotation

marks omitted)).

Turning to Plaintiff's claims, as clarified. As noted above, Counts Three and Four are most

easily read to be common law causes of action founded upon principles of contract law. It is not

apparent at all that Plaintiff intended to bring claims under § 301 of the LMRA. And upon

examination of the allegations, it does not appear that a § 301 claim was adequately plead or even

timely.[4] A complaint must meet the notice pleading requirements of Rule 8 of the Federal Rules

---

[4] As explained below, Plaintiff may only bring a claim that Defendant breached the CBA if she also proves that the
Union violated its duty of fair representation to her, also known as a hybrid § 301 claim. Like the CFEPA and
ADEA claims, Plaintiff's hybrid § 301 claim appears to be time barred. *See Carrion v. Enterprise Ass'n, Metal
Trades Branch Local Union*, 638, 227 F.3d 29, 33 (2d Cir. 2000) (six-month statute of limitations applies to hybrid
§ 301/fair representation claims (citing *DelCostello*, 462 U.S. at 155)). The limitations period "begins to run when
the employee knew or should have known of the breach of the duty of fair representation." *Id.* at 34 (quoting *White
v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997)). Thus, the latest the statute of limitations started to run may
have been April 27, 2021, the date of the arbitration hearing on Plaintiff's termination grievance. Plaintiff therefore
would have been required to file her federal complaint by October 27, 2021. But her federal lawsuit was filed
January 2, 2022. However, like Plaintiff's age discrimination claims, the statute of limitations may be equitably
tolled. *See Arnold v. 1199 SEIU*, 420 F. Appx. 48, 51 (2d Cir. 2011) (summary order) ("The statute of limitations
can be tolled until the plaintiff discovers the breach '[w]hen a union's action or inaction rises to the level of
fraudulent concealment.'" (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 69 (2d Cir. 1995)); *Serrano v.
USA United Transit, Inc.*, 402 F. Appx. 574, 575–76 (2d Cir. 2010) (summary order) (applying "reasonable
diligence" and "extraordinary" circumstances test for equitable tolling for failure to file a hybrid § 301 claim before
expiration of six-month statute of limitations (citing *Zerrilli-Edelglass*, 333 F.3d at 80)).

of Civil Procedure. The "principal function" of the pleading requirements embodied in Rule 8 "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with Rule 8's requirements, "the court has the power, on its own initiative . . . to dismiss the complaint." *Id.* "The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). "[F]air notice [is] that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Id.* (internal quotation marks omitted). Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to *know whether there is a legal basis for recovery.*'" *Kittay v. Kornstein*, 230 F. 3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (emphasis added).

In this vein, § 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction to the parties." 29 U.S.C. § 185(a). Section 301 grants federal district courts original jurisdiction over "controversies involving collective bargaining agreements" and "authorizes federal courts to fashion a body of federal law for the enforcement of" such agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (internal citations and quotation marks omitted). An "employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) (quoting *Vaca v. Sipes*,

386 U.S. 171, 186 (1967)). This includes claims alleging a breach of the implied covenant of good faith and fair dealing in the CBA. *See Aeronautical Indus. Dist. Lodge 91 of Intern. Ass'n of Machinists and Aerospace Workers v. United Technologies Corp.*, 87 F. Supp. 116, 127 (D. Conn. 2000); *Allis-Chalmers Corp.*, 471 U.S. at 220 (bad faith claim rooted in a CBA could be brought under § 301).

A "suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'" *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (internal citations omitted); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). In a hybrid § 301 claim, an employee may sue the union, the employer, or both, but "must prove *both* (1) that the employer breached a collective bargaining agreement *and* (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001) (emphasis added). To "prevail against either the company or the Union," employee-plaintiffs "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of the duty by the Union." *DelCostello*, 462 U.S. at 165. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.*

Here, Plaintiff's Amended Complaint contains no factual allegations related to the conduct of her Union which would implicate the Union's duty of fair representation to Plaintiff or a breach of this duty.[5] The Amended Complaint only alleges that a Union representative was present at the December 11, 2019 meeting during which Plaintiff was harassed and her employment was terminated. And whether Plaintiff is aware of facts which would support a claim that the Union

---

[5] Indeed, fairly read, Plaintiff's factual allegations meet none of the requisites for pleading a breach of the duty of fair representation by her Union as articulated in *Tomney*, 357 F. Supp. at 735.

breached its duty of fair representation is unknown. Absent allegations regarding the Union, the Amended Complaint fails to state a hybrid § 301 claim and similarly fails to adequately apprise Defendant that a § 301 claim is asserted.[6]

The Court recognizes that the Second Circuit has cautioned district courts that dismissals on grounds raised *sua sponte* are disfavored without providing a plaintiff notice and an opportunity to be heard. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam). The adequacy of any § 301 claim was not raised by Defendant in its principal motion to dismiss, which the Court does not fault given the paucity of allegations related to the Union. However, once the Plaintiff asserted that she intended to raise § 301 claims, Defendant did not challenge the legal sufficiency of such claims. Had it done so, Plaintiff would have been afforded the opportunity to file a sur-reply on the issue. Plaintiff has therefore not been provided prior notice and an opportunity to be heard concerning the legal sufficiency these claim. *See Chodkowski v. County of Nassau*, No. 16-cv-5770 (SJF) (GRB), 2017 WL 10637956, at *14 (E.D.N.Y. Nov. 30, 2017); *Grant v. County of Erie*, 542 F. Appx. 21, 24 (2d Cir. 2013) (summary order) (plaintiff not afforded notice and opportunity to be heard when defendant failed to raise a failure to state a claim argument in its motion to dismiss or reply memorandum). But where, as here, the failure to state a claim is patent, a dismissal without notice may still be appropriate because giving notice "can only lead to a waste of judicial resources." *Gonzalez v. Ocwen Home Loan Serving*, 74 F. Supp. 3d 504, 519 (D. Conn. 2015) (citing *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726–27 (D. C. Cir. 1990); *In re Indu Craft, Inc.*, 630 F. Appx. 27, 29 (2d Cir. 2015) (summary order) (same). In the interests of judicial efficiency, the motion to dismiss as to Counts Three and Four is GRANTED. However,

---

[6] In arguing that the common law contract claims are preempted, Defendant asserts that the Court would necessarily be required to interpret the CBA. The Court agrees and finds that the Amended Complaint adequately alleges a breach of the CBA, albeit without much specification. Absent from the Amended Complaint is the second component of a hybrid §301 claim: a breach of the duty of fair representation by the Union.

the dismissal is without prejudice to the filing of a Second Amended Complaint so as to afford Plaintiff the opportunity to address the factual deficiencies identified herein with respect to the hybrid § 301 claims and the equitable tolling of the statute of limitations applicable thereto.

*Count Five — Wrongful Termination in Violation of Public Policy*

Defendant next seeks dismissal of Plaintiff's common law claim of wrongful termination in violation of public policy claim insofar as Plaintiff was not an at-will employee. Plaintiff responds, largely without authority and citing to factual allegations not contained in her Amended Complaint, that her claim should not be foreclosed because while she had a right to just cause termination under the CBA, she was deprived of that right due to Defendant's "fraud."

Plaintiff's wrongful termination in violation of public policy claim fails as matter of law because she was a union member protected by a CBA. In *Sheets v. Teddy's Frosted Foods, Incorporated*, 179 Conn. 471, 475, 427 A.2d 385 (1980), the Connecticut Supreme Court recognized a common law cause of action for wrongful termination "if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Id.* at 475, 427 A.2d 385. Under this "public policy exception to the *employment at will* rule," a plaintiff "has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986) (emphasis added). Plaintiff does not argue, nor can she, that she was an at-will employee. *See Bailey v. Grocery Haulers, Inc.*, No. 3:15-cv-1835 (JBA), 2017 WL 1025664, at *4 (D. Conn. Mar. 16, 2017) ("Because Plaintiff is not an at-will employee, his common law wrongful discharge claim fails as a matter of law." (footnote omitted)); *Konstantinidis v. First Student Inc.*, No. 3:14-cv-844 (JAM), 2016 WL 6080194, at *6 (D. Conn. Oct. 17, 2016) (A public policy "wrongful discharge claim is available only to at-will employees,

not employees—like plaintiff—whose employment was protected by a just-cause provision of a collective bargaining agreement"). The motion to dismiss as to Count Five is GRANTED.

*Count Six — Intentional Infliction of Emotional Distress*

Defendant seeks dismissal of the Plaintiff's IIED claim on the ground that the allegations, even if proven, do not rise to the level necessary to state a claim for IIED under Connecticut law. Plaintiff counters that dismissal at this stage of the proceedings is inappropriate because a jury should decide whether Defendant's actions were sufficiently egregious so as to support the IIED claim.

In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege: (1) that the Defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe. *See Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (citing *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society." *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (internal quotation marks omitted) (citing *Carrol v. Allstate Insurance Co.*, 262 Conn. 433, 443 (2003)). It is conduct that is "regarded as atrocious, and utterly intolerable in a civilized community. . . [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Appleton*, 254 Conn. at 211 (citation and internal quotation marks omitted).

Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."

*Id.* (internal quotation marks omitted). Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (citing *Johnson v. Chesebrough–Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)). Only where reasonable minds might disagree does it become an issue for the jury. *Di Teresi v. Stamford Health System, Inc.*, 142 Conn. App. 72, 87 (2013).

Plaintiff's allegations simply do not rise to the level of extreme and outrageous conduct as required under Connecticut law. Defendant is alleged to have harassed Plaintiff "in the form of unwarranted investigations and unnecessary discipline based on false accusations." Amend. Compl. ¶ 36. Defendant is further alleged to have failed to address Plaintiff's complaint about "younger co-workers behaving unprofessionally on a number of occasions." *Id.*

Even if proven, the conduct and the motive combined do not amount to "atrocious" conduct or conduct that is "utterly intolerable in a civilized community." *See Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012) (where defendants told plaintiff that her career was in jeopardy during a performance evaluation and thereafter transferred her to a different school, no juror could conclude that the conduct was "beyond all possible bounds of decency . . . atrocious, and utterly intolerable in a civilized community"); *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 562–70 (2007) (motion to strike IIED claim properly granted where plaintiff claimed that defendants conspired to engage in a pattern of harassment including denial of a position, initiation of disciplinary actions without proper investigation, and defamation and intimidation of plaintiff), *cert. denied*, 284 Conn. 910 (2007); *Appleton*, 254 Conn. at 211–12 (summary judgment against plaintiff on IIED claim was proper where defendants made condescending comments about plaintiff in front of colleagues, questioned plaintiff's vision and ability to read, informed plaintiff's

daughter that she was acting differently and should take time off, asked police to escort plaintiff from school, required plaintiff to subject herself to psychiatric testing, forced plaintiff to take leave of absence, suspended plaintiff, and forced plaintiff to resign); *see also Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004) ("Although employment discrimination is illegal, it does not per se give rise to a claim for intentional infliction of emotional distress."); *Koestner v. Derby Cellular Prod.*, 518 F. Supp. 2d 397, 403 (D. Conn. 2007) (same). The motion to dismiss as to Count Six is GRANTED.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 20) is GRANTED. The dismissal of Counts One, Two, Three, and Four is without prejudice to the filing of a Second Amended Complaint as detailed above. The dismissal of Count Five, the wrongful termination in violation of public policy claim, and Count Six, the IIED claim, are with prejudice. Plaintiff shall file a Second Amended Complaint on or before March 27, 2023. The failure to file a Second Amended Complaint will result in dismissal of this action with prejudice as to the remaining claims on March 28, 2023 without further notice from the Court.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of March 2023.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE